UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| **INSURED AIRCRAFT TITLE SERVICE, LLC**, a Delaware limited liability company, | ) ) ) ) |
| Plaintiff, | ) ) ) |
| v. | ) ) Case No. CIV-20-742-G |
| **COMFORT JET AVIATION, LTD.** et al., | ) ) ) ) |
| Defendants, | ) ) |
| and | ) ) |
| **KENT LUBRICATION CENTERS, LTD.**, | ) ) ) ) |
| Third-Party Defendant. | ) |

## OPINION AND ORDER

Now before the Court is Third-Party Plaintiff Dassault Falcon Jet-Wilmington Corp.'s ("DFJ-W") Motion for Summary Judgment on Kent Lubrication Centers, Ltd.'s ("KLC") Counterclaims (Doc. No. 163). KLC submitted a Response in opposition (Doc. No. 169), and DFJ-W submitted a Reply in further support of its Motion (Doc. No. 171).

This lawsuit, initiated as an interpleader action by Plaintiff Insured Aircraft Title Service, LLC ("IATS"), involves numerous claims by and among several defendants relating to the sale of a 1987 Dassault Falcon 900 aircraft (the "Aircraft"). In 2018, Comfort Jet Aviation, Ltd. ("CJA") agreed to sell the Aircraft to Kent Aviation, LLC pursuant to a purchase agreement. In anticipation of the sale of the Aircraft, CJA engaged

DFJ-W to perform a "C-Check" inspection of the Aircraft and to perform associated maintenance and repairs.

DFJ-W, a defendant in the interpleader action, asserts a third-party claim against KLC, and KLC asserts four counterclaims against DFJ-W. *See* DFJ-W Third-Party Compl. (Doc. No. 60) at 4; KLC Countercls. (Doc. No. 66) at 21-30. The Court addresses in this Order DFJ-W's motion for summary judgment as to KLC's counterclaim seeking relief against DFJ-W on a theory of negligence per se.[1]

I. SUMMARY JUDGMENT STANDARD OF REVIEW

Summary judgment is a means of testing in advance of trial whether the available evidence would permit a reasonable jury to find in favor of the party asserting a claim. The Court must grant summary judgment when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

A party that moves for summary judgment has the burden of showing that the undisputed material facts require judgment as a matter of law in its favor. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). To defeat summary judgment, the nonmovant need not convince the Court that it will prevail at trial, but it must cite sufficient evidence admissible at trial to allow a reasonable jury to find in the nonmovant's favor—i.e., to show that there is a question of material fact that must be resolved by the jury. *See Garrison v. Gambro, Inc.*, 428 F.3d 933, 935 (10th Cir. 2005). The Court must then determine

---

[1] The Court has dismissed KLC's counterclaims for negligence and *res ipsa loquitur* by Order entered on today's date. The Court shall address KLC's remaining counterclaim for entry of declaratory judgment by separate order.

"whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).

Parties may establish the existence or nonexistence of a material disputed fact by:

- citing to "depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials" in the record; or

- demonstrating "that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."

Fed. R. Civ. P. 56(c)(1)(A), (B).  While the Court views the evidence and the inferences drawn from the record in the light most favorable to the nonmoving party, *see Pepsi-Cola Bottling Co. of Pittsburg, Inc. v. PepsiCo, Inc.*, 431 F.3d 1241, 1255 (10th Cir. 2005), "[t]he mere existence of a scintilla of evidence in support of the [nonmovant's] position will be insufficient; there must be evidence on which the [trier of fact] could reasonably find for the [nonmovant]." *Liberty Lobby*, 477 U.S. at 252.

## II.  UNDISPUTED MATERIAL FACTS[2]

### A. The C-Check

In August 2018, CJA retained DFJ-W to perform a "C-Check" on the Aircraft pursuant to an Aircraft Work Proposal and Agreement ("C-Check Agreement"), dated August 15, 2018.  *See* DFJ-W Ex. 1, C-Check Agt. (Doc. No. 163-1).[3]  A C-Check is a

---

[2] Facts relied upon are uncontroverted or, where genuinely disputed, identified as such and viewed in the light most favorable to KLC as the nonmovant.

[3] References to exhibits submitted by DFJ-W with its Motion (Doc. No. 163) are designated as "DFJ-W Ex."  References to exhibits submitted by KLC with its Motion (Doc. No. 151)

3

comprehensive maintenance procedure for aircraft in which an aircraft is inspected, and any problems identified, known as "discrepancies," are repaired. DFJ-W Ex. 2, Dishman Dep. (Doc. No. 163-2) at 41:11-20.

In November 2018, the Aircraft was delivered to DFJ-W's maintenance facility in Wilmington, Delaware, for the C-Check. *See* DFJ-W Ex. 5, Staffini E-mail (Doc. No. 163-5) at 1. DFJ-W performed inspection and repair work on the Aircraft until approximately August 2019. *See* DFJ-W Ex. 8, Dishman Letter (Doc. No. 163-8) at 1.

In August 2019, a dispute arose between CJA and DFJ-W regarding the scope and cost of the ongoing maintenance work on the Aircraft, and CJA ceased approval of further payments to DFJ-W. *See* Ex. 264-6, Staffini Aff. at 5. DFJ-W then halted work on the Aircraft. *See id.*; Ex. 264-2, McDevitt Aff. at 2. The Aircraft remains presently in storage at DFJ-W's maintenance facility in Delaware. *See* Ex. 264-2, McDevitt Aff. at 2. In a letter from Mitch Dishman, DFJ-W's general manager, to Julien Chebance, a CJA representative, dated February 9, 2020, DFJ-W stated that the outstanding balance owed by CJA for the C-Check was $1,201,822.66. *See* DFJ-W Ex. 8, Dishman Letter at 2.

*B. The Aircraft Purchase Agreement and Promissory Note*

In September 2018, CJA entered into an agreement to sell the Aircraft to Kent Aviation for $2,500,000, pursuant to an Aircraft Purchase Agreement ("APA") dated September 21, 2018. *See* KLC Ex. 8, APA (Doc. No. 151-8). Although repairs were

---

are designated as "KLC Ex." References to exhibits submitted in connection with other motions for summary judgment are designated as "Ex." and cited with the corresponding docket number.

ongoing, CJA and Kent Aviation closed the transaction for the sale of the Aircraft on February 6, 2019. *See* Ex. 264-6, Staffini Aff. at 4.

On February 4, 2019, Kent Aviation obtained a loan from American Momentum Bank ("AMB"), secured by a purchase money security interest in the Aircraft. *See* DFJ-W Ex. 9, Sec. Agt. (Doc. No. 163-9) at 1-2, 6. The parties do not submit the promissory note or other agreement evidencing the terms of the loan.

On January 20, 2021, AMB and KLC executed an Assignment of Security Agreement, in which AMB assigned the February 4, 2019 Security Agreement to KLC (the "Assignment"). *See* KLC Ex. 1 (Doc. No. 151-1) at 1-3. The Assignment recites that AMB "is the holder of a $3,031,000 Promissory Note, dated February 4, 2019" made by Kent Aviation. *Id.* at 1. The Assignment references a letter agreement among AMB, William B. Kent as guarantor of the loan, Kent Aviation, and KLC. *See id.* The referenced letter agreement does not appear to be in the record. The Assignment provides that "FOR TEN DOLLARS ($10.00) and for other good and valuable consideration, including that set forth in [the] letter agreement . . . , AMB hereby ASSIGNS to KLC, without recourse, the Security Agreement and all liens that AMB holds to the Aircraft." *Id.* The Assignment bears a stamp indicating that it was recorded with the Federal Aviation Administration ("FAA") on April 2, 2021. *Id.*

William "Bill" Kent wholly owns Kent Aviation and KLC. *See* Kent Aviation Am. Cross-Cls. (Doc. No. 63) at 1; DFJ-W Ex. 11, Kent Dep. (Doc. No. 163-11) at 9:7-19. Mr. Kent testified that KLC purchased the loan note from AMB in January 2021. DFJ-W Ex. 11, Kent Dep. at 10:7-16. Mr. Kent acknowledged that this litigation was ongoing in

5

January 2021, and he testified that "the bank didn't need to be involved in this whole process," that "it was already complex enough," and that "I didn't want them to be worried about . . . this loan or their collateral; so I just offered to buy the note." *Id.* at 10:25-11:11. Regarding the value of the Aircraft as collateral in January 2021, Mr. Kent testified that "honestly, we saw this thing as not having a lot of value, maybe salvage value, but not a whole lot." *Id.* at 15:9-16. Mr. Kent testified that the note is not in default and that KLC is making monthly payments of principal and interest on the note.[4] *See id.* at 17:2-10; 36:1-13. Mr. Kent testified that the Kent Aviation debt service payments are "going from one pocket to the other." *Id.* at 36:10-13. Aside from the Assignment, KLC does not include documentation relating to KLC's purchase of the promissory note from AMB or state the amount of principal remaining on the loan.

III. DISCUSSION

    A. *Choice of Law*

The Court has previously determined that Delaware substantive law governs consideration of KLC's claim against DFJ-W for negligence per se. *See* Order dated June 16, 2023 (Doc. No. 339) at 4-5.

    B. *Analysis*

KLC asserts that DFJ-W violated FAA regulations when it used scratched wing bolts to reattach the wings of the Aircraft, citing 14 C.F.R. § 43.13. *See* KLC Countercls.

---

[4] Mr. Kent testified that Kent Aviation missed certain payments due to an internal error and made catch-up payments to correct the error, adding that "we weren't going to foreclose on oursel[ves]." DFJ-W Ex. 11, Kent Dep. at 13:16-15:6.

at 24-25; KLC Resp. at 34-36.  This regulation prescribes general rules for performing maintenance and repairs on aircraft, directing aircraft maintenance personnel to perform repairs in conformity with manufacturer standards and to maintain certain aircraft standards.  *See* 14 C.F.R. § 43.13(a)-(c).

"It has been long settled in this State that the violation of a statute or ordinance enacted for the safety of others is negligence in law or negligence per se."  *Sammons v. Ridgeway*, 293 A.2d 547, 549 (Del. 1972).  "[A] plaintiff who invokes a statute must be a member of the class of persons for whose protection or benefit the statute was enacted."  *Wright v. Moffitt*, 437 A.2d 554, 557 (Del. 1981) (internal quotation marks omitted).

DFJ-W primarily argues that KLC may not recover on a theory of negligence per se because KLC is not "a member of the class of persons for whose protection or benefit" the FAA regulations were enacted.  *See* DFJ-W Mot. at 21-22.  KLC objects that secured parties are within "the class of persons that Congress intended to protect by passing laws directing the FAA to promulgate regulations designed to ensure that repairs and maintenance are properly performed."  KLC Resp. at 36 (citing *Taylor v. Huerta*, 856 F.3d 1089 (D.C. Cir. 2017)).

KLC's cited decision does not address the class intended to be protected by § 43.13 or otherwise establish that the financial interests of secured entities lie within the FAA's charge of "maintaining the safety of the Nation's air traffic," however.  *Taylor*, 856 F.3d at 1090; *see also id.* at 1091 (citing 49 U.S.C. § 44701, which prescribes that the FAA "shall promote safe flight of civil aircraft in air commerce" by setting standards and issuing

regulations for aircraft, components, air carriers, and airports).[5]  Absent adequate support for the proposition that KLC is entitled, through its status as a secured entity or otherwise, to pursue a negligence per se claim based upon DFJ-W's alleged violation of an FAA regulation, DFJ-W is entitled to judgment as a matter of law on this claim.

## CONCLUSION

As outlined above, Dassault Falcon Jet-Wilmington Corp.'s Motion for Summary Judgment on Kent Lubrication Centers, Ltd. Counterclaims (Doc. No. 163) is GRANTED IN PART.  Specifically, the Court determines that summary judgment should be entered in favor of Dassault Falcon Jet-Wilmington Corp. as to the counterclaim for negligence per se brought by Kent Lubrication Centers, Ltd.

IT IS SO ORDERED this 16th day of June, 2023.

CHARLES B. GOODWIN
United States District Judge

---

[5] Even assuming KLC could pursue such a claim, and further assuming that an impairment to collateral securing a loan could qualify as an actionable injury in tort to the security holder, KLC was aware of the impaired condition of the Aircraft when it acquired the security interest in January 2021.  The repairs that reportedly damaged the value of the Aircraft occurred in 2019.  Bill Kent, KLC's owner, testified that "honestly, we saw [the Aircraft] as not having a lot of value, maybe salvage value, but not a whole lot" when KLC acquired the security interest in January 2021. DFJ-W Ex. 11, Kent Dep. at 15:9-16.  KLC still has today what it bargained for in January 2021—a security interest in impaired collateral.