UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| **INSURED AIRCRAFT TITLE SERVICE, LLC**, a Delaware limited liability company,<br><br>  Plaintiff,<br><br>v.<br><br>**COMFORT JET AVIATION, LTD.** et al.,<br><br>  Defendants,<br><br>and<br><br>**KENT LUBRICATION CENTERS, LTD.**,<br><br>  Third-Party Defendant. | Case No. CIV-20-742-G |

## ORDER

Now before the Court are Third-Party Plaintiff Dassault Falcon Jet-Wilmington Corp.'s ("DFJ-W") Motion for Summary Judgment on Kent Lubrication Centers, Ltd.'s Counterclaims (Doc. No. 163) and Third-Party Defendant Kent Lubrication Centers, Ltd.'s ("KLC") Motion for Partial Summary Judgment (Doc. No. 151).[1] The parties have each submitted a Response (Doc. Nos. 169, 153) and a Reply (Doc. Nos. 171, 156).

---

[1] The Court addresses in this Order DFJ-W's motion for summary judgment as to KLC's Declaratory Judgment Claim, as defined herein, and DFJ-W's request for an award of attorney's fees. The Court shall address KLC's remaining counterclaims (for negligence, negligence per se, and *res ipsa loquitur*) by separate order.

I.  STANDARD OF REVIEW

Summary judgment is a means of testing in advance of trial whether the available evidence would permit a reasonable jury to find in favor of the party asserting a claim. The Court must grant summary judgment when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

A party that moves for summary judgment has the burden of showing that the undisputed material facts require judgment as a matter of law in its favor. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). To defeat summary judgment, the nonmovant need not convince the Court that it will prevail at trial, but it must cite sufficient evidence admissible at trial to allow a reasonable jury to find in the nonmovant's favor—i.e., to show that there is a question of material fact that must be resolved by the jury. *See Garrison v. Gambro, Inc.*, 428 F.3d 933, 935 (10th Cir. 2005). The Court must then determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).

Parties may establish the existence or nonexistence of a material disputed fact by:

- citing to "depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials" in the record; or

- demonstrating "that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."

Fed. R. Civ. P. 56(c)(1)(A), (B). While the Court views the evidence and the inferences drawn from the record in the light most favorable to the nonmoving party, *see Pepsi-Cola*

*Bottling Co. of Pittsburg, Inc. v. PepsiCo, Inc.*, 431 F.3d 1241, 1255 (10th Cir. 2005), "[t]he mere existence of a scintilla of evidence in support of the [nonmovant's] position will be insufficient; there must be evidence on which the [trier of fact] could reasonably find for the [nonmovant]." *Liberty Lobby*, 477 U.S. at 252.

When the moving party has the burden of proof at trial, "a more stringent summary judgment standard applies." *Pelt v. Utah*, 539 F.3d 1271, 1280 (10th Cir. 2008). The moving party cannot carry its burden by "pointing to parts of the record that [the movant] believes illustrate the absence of a genuine issue of material fact." *Id.* Rather, to obtain summary judgment on its own claim or defense, a movant "must establish, as a matter of law, all essential elements of the issue before the nonmovant can be obligated to bring forward any specific facts alleged to rebut the movant's case." *Id.*

Regarding cross-motions for summary judgment, the Tenth Circuit has explained:

> "The filing of cross-motions for summary judgment does not necessarily concede the absence of a material issue of fact. This must be so because by the filing of a motion a party concedes that no issue of fact exists under the theory he is advancing, but he does not thereby so concede that no issues remain in the event his adversary's theory is adopted." *Nafco Oil & Gas, Inc. v. Appleman*, 380 F.2d 323, 324-25 (10th Cir. 1967). Accordingly, "cross motions for summary judgment are to be treated separately; the denial of one does not require the grant of another." *Christian Heritage Acad. v. Okla. Secondary Sch. Activities Ass'n*, 483 F.3d 1025, 1030 (10th Cir. 2007). "Even where the parties file cross motions pursuant to Rule 56, summary judgment is inappropriate if disputes remain as to material facts.'" *Id*.

*Brown v. Perez*, 835 F.3d 1223, 1230 n.3 (10th Cir. 2016) (alteration and citations omitted).

II.   UNDISPUTED MATERIAL FACTS[2]

   *A. The C-Check*

This lawsuit, initiated as an interpleader action by Plaintiff Insured Aircraft Title Service, LLC ("IATS"), involves numerous claims by and among several defendants relating to the sale of a 1987 Dassault Falcon 900 aircraft (the "Aircraft"). In 2018, Comfort Jet Aviation, Ltd. ("CJA") agreed to sell the Aircraft to Kent Aviation, LLC pursuant to a purchase agreement. In anticipation of the sale of the Aircraft, CJA engaged DFJ-W to perform a "C-Check" inspection of the Aircraft and to perform associated maintenance and repairs pursuant to an Aircraft Work Proposal and Agreement ("C-Check Agreement"), dated August 15, 2018. *See* DFJ-W Ex. 1, C-Check Agt. (Doc. No. 163-1).[3] A C-Check is a comprehensive maintenance procedure in which an aircraft is inspected and any problems identified, known as "discrepancies," are repaired. DFJ-W Ex. 2, Dishman Dep. (Doc. No. 163-2) at 41:11-20.

In November 2018, the Aircraft was delivered to DFJ-W's maintenance facility in Wilmington, Delaware, for the C-Check. *See* DFJ-W Ex. 5, Staffini E-mail (Doc. No. 163-5) at 1. DFJ-W performed inspection and repair work on the Aircraft until approximately August 2019. *See* DFJ-W Ex. 8, Dishman Letter (Doc. No. 163-8) at 1.

---

[2] Facts relied upon are uncontroverted or, where genuinely disputed, identified as such and viewed in the light most favorable to the nonmovant.

[3] References to exhibits submitted by DFJ-W with its Motion (Doc. No. 163) are designated as "DFJ-W Ex." References to exhibits submitted by KLC with its Motion (Doc. No. 151) are designated as "KLC Ex." References to exhibits submitted in connection with other motions for summary judgment are designated as "Ex." and cited with the corresponding docket number.

4

In August 2019, a dispute arose between CJA and DFJ-W regarding the scope and cost of the ongoing maintenance work on the Aircraft, and CJA ceased approval of further payments to DFJ-W.  *See* Ex. 264-6, Staffini Aff. at 5.  DFJ-W then halted work on the Aircraft.  *See id.*  The Aircraft remains presently in storage at DFJ-W's maintenance facility in Delaware.  *See* Ex. 264-2, McDevitt Aff. at 2.  In a letter from Mitch Dishman, DFJ-W's general manager, to Julien Chebance, a CJA representative, dated February 9, 2020, DFJ-W stated that the outstanding balance owed by CJA for the C-Check was $1,201,822.66.  *See* DFJ-W Ex. 8, Dishman Letter at 2.

*B. The Aircraft Purchase Agreement and Promissory Note*

In September 2018, CJA entered into an agreement to sell the Aircraft to Kent Aviation for $2,500,000, pursuant to an Aircraft Purchase Agreement ("APA") dated September 21, 2018.  *See* KLC Ex. 8, APA (Doc. No. 151-8).  Although repairs were still being performed, CJA and Kent Aviation closed the transaction for the sale of the Aircraft on February 6, 2019.  *See* Ex. 264-6, Staffini Aff. at 4.

On February 4, 2019, Kent Aviation obtained a loan from American Momentum Bank ("AMB"), secured by a purchase money security interest in the Aircraft.  *See* DFJ-W Ex. 9, Sec. Agt. (Doc. No. 163-9) at 1-2, 6.  The parties have not submitted the promissory note or other agreement evidencing the terms of the loan.

On January 20, 2021, AMB and KLC executed an Assignment of Security Agreement, in which AMB assigned the February 4, 2019 Security Agreement to KLC (the "Assignment").  *See* KLC Ex. 1 (Doc. No. 151-1) at 1-3.  The Assignment recites that AMB "is the holder of a $3,031,000 Promissory Note, dated February 4, 2019" made by

5

Kent Aviation. *Id.* at 1. The Assignment references a letter agreement among AMB, William B. Kent as guarantor of the loan, Kent Aviation, and KLC. *See id.* The referenced letter agreement does not appear to be in the record. The Assignment provides that "FOR TEN DOLLARS ($10.00) and for other good and valuable consideration, including that set forth in [the] letter agreement . . . , AMB hereby ASSIGNS to KLC, without recourse, the Security Agreement and all liens that AMB holds to the Aircraft." *Id.* The Assignment bears a stamp indicating that it was recorded with the Federal Aviation Administration ("FAA") on April 2, 2021. *Id.*

William "Bill" Kent wholly owns Kent Aviation and KLC. *See* Kent Aviation Am. Cross-Cls. (Doc. No. 63) at 1; DFJ-W Ex. 11, Kent Dep. (Doc. No. 163-11) at 9:7-19. Mr. Kent testified that KLC purchased the loan note from AMB in January 2021. DFJ-W Ex. 11, Kent Dep. at 10:7-16. Mr. Kent acknowledged that this litigation was ongoing in January 2021, and he testified that "the bank didn't need to be involved in this whole process," that "it was already complex enough," and that "I didn't want them to be worried about . . . this loan or their collateral; so I just offered to buy the note." *Id.* at 10:25-11:11. Regarding the value of the Aircraft as collateral in January 2019, Mr. Kent testified that "honestly, we saw this thing as not having a lot of value, maybe salvage value, but not a whole lot." *Id.* at 15:9-16. Mr. Kent testified that the note is not in default and that KLC is making monthly payments of principal and interest on the note. *See id.* at 17:2-10; 36:1-13. Mr. Kent testified that the Kent Aviation debt service payments are "going from one pocket to the other." *Id.* at 36:10-13. KLC does not include documentation relating to

6

KLC's purchase of the promissory note from AMB or state the amount of principal remaining on the loan.

III. DISCUSSION

    A. *Declaratory Judgment*

DFJ-W, a defendant in the interpleader action, asserts a third-party claim (the "Lien Foreclosure Claim") against KLC, seeking foreclosure of its mechanic's lien on the Aircraft and authorization to sell the Aircraft to satisfy the lien, all pursuant to Delaware state law. *See* DFJ-W Am. Cross-Cl. & Third-Party Compl. (Doc. No. 60) ¶¶ 14-18 (citing Del. Code tit. 25, §§ 3901 et seq.).[4] KLC asserts several counterclaims against DFJ-W, including a claim for a judicial declaration of the validity and superiority of KLC's security interest under the Security Agreement and associated relief (the "Declaratory Judgment Claim"). *See* KLC Countercls. (Doc. No. 66) at 21-22, ¶¶ 48-54. Both parties seek summary judgment on KLC's counterclaim. *See* KLC Mot. at 6-34; DFJ Mot. at 5, 10-18.

KLC's request for declaratory judgment as to the validity and priority of its alleged perfected security interest in the Aircraft is inextricably intertwined with, and at least partially contingent upon, DFJ-W's effort to foreclose its own lien under Delaware law. Indeed, KLC argues that its Declaratory Judgment Claim presents an actual controversy *because* "DFJ-W is seeking to foreclose a lien." KLC Mot. at 19; *see also* KLC Countercls. at 22, ¶¶ 53-54.

---

[4] DFJ-W also asserts the Lien Foreclosure Claim as a cross-claim against Kent Aviation. *See* DFJ-W Am. Cross-Cl. & Third-Party Compl. ¶ 17. Kent Aviation filed an Answer to this cross-claim (Doc. No. 74) and did not seek dismissal or summary judgment.

Because the existence or extent of any mechanic's lien held by DFJ-W depends upon determination of whether DFJ-W is owed money for its work on the Aircraft, and if so from whom, it is not apparent to the Court that KLC's Declaratory Judgment Claim is justiciable at this time. *See Columbian Fin. Corp. v. BancInsure, Inc.*, 650 F.3d 1372, 1380 (10th Cir. 2011) ("[G]enerally one cannot bring a declaratory-judgment action just to resolve one isolated issue in a possible future controversy. A declaratory judgment that would not have practical consequences without later additional litigation is not proper."). For purposes of resolving the present motions, the Court observes that neither party has adequately shown how, absent a determination of that underlying claim, the Court can properly issue a declaratory judgment regarding the status of competing interests in the Aircraft, or that the Court may "temporarily enjoin" or otherwise prevent "DFJ-W from foreclosing its alleged lien." KLC Countercls. at 22, ¶ 54. It follows that neither party has shown it is entitled to judgment as a matter of law. The entry of summary judgment in either party's favor on the Declaratory Judgment Claim would be premature at this juncture.

### B. Attorney's Fees

DFJ-W moves for sanctions under Federal Rule of Civil Procedure 26(g)(3), requesting that the Court order KLC to pay DFJ-W's reasonable expenses, including attorney's fees, caused by a violation of Rule 26(g)(1)(A). *See* DFJ-W Mot. at 23-24. Rule 26(g)(1)(A) provides that when an attorney signs a disclosure or discovery document, the attorney certifies that "it is complete and correct as of the time it is made." Fed. R. Civ. P. 26(g)(1)(A).

8

The Court finds that DFJ-W has not shown that counsel for KLC signed a disclosure or discovery document that was incomplete or inaccurate "as of the time it [was] made." *Id*. Therefore, DFJ-W's request for sanctions is denied.

DFJ-W also moves for attorney's fees under title 12, section 940(A) of the Oklahoma Statutes. *See* DFJ-W Mot. at 24-25. This request is denied as premature. DFJ-W may renew its request for attorney's fees, to the extent applicable, after entry of judgment. *See* Fed. R. Civ. P. 54(d)(1)-(2).

## CONCLUSION

As outlined above, Third-Party Plaintiff Dassault Falcon Jet-Wilmington Corp.'s Motion for Summary Judgment on Kent Lubrication Centers, Ltd. Counterclaims (Doc. No. 163) is DENIED IN PART. Specifically, the Court DENIES the Motion as to KLC's counterclaim for declaratory judgment and as to the request for attorney's fees.

Third-Party Defendant Kent Lubrication Centers, Ltd.'s Motion for Partial Summary Judgment (Doc. No. 151) is DENIED.

IT IS SO ORDERED this 16th day of June, 2023.

_____
CHARLES B. GOODWIN
United States District Judge